IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.M., : | |
|     Petitioner : | |
|       v. : | Case No. 3:24-cv-255-KAP |
| LEONARD ODDO, WARDEN, : | |
| MOSHANNON VALLEY PROCESSING : | |
| CENTER, *et al.*, : | |
|     Respondents : | |

### Memorandum Order

After consideration of the precedent in this district applying four-factor framework set out in German Santos v. Warden Pike County Corrections Facility, 965 F.3d 203, 211 (3d Cir. 2020), the Petition, ECF No. 1, is granted. An Immigration Judge shall provide petitioner with an individualized bond hearing in which the government bears the burden of proof by clear and convincing evidence within 7-10 days from the date of this Order and the respondent shall provide notice of the same to this Court. A line of cases chiefly from the Middle District of Pennsylvania holds that the district court has the power to enforce its writ by holding its own bond hearing and granting release in cases where the bond hearing ordered by writ itself is shown to be defective. *See e.g.* Santos v. Lowe, 2020 WL 4530728 (M.D. Pa. Aug. 6, 2020), but ordinarily the appeal of an IJ's decision is to the BIA. Coffie-Joseph v. Oddo, No. 3:24-CV-114-KAP, 2025 WL 2596940, at *1 (W.D. Pa. Sept. 8, 2025). Accordingly, this is a final order.

Petitioner was detained in December 2023 by the Department of Homeland Security, Bureau of Immigration Control and Enforcement, at the Moshannon Valley Processing Center in this district when he submitted a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2241. *See* ECF no. 1 (Petition), ECF no. 2 (Exhibits), ECF no. 3 (Petitioner's Brief). Petitioner has since been transferred for medical reasons to the Northwest ICE Processing Center but that does not impair this court's jurisdiction, which attaches at the time of filing. The respondent's Response is at ECF no. 17.

The Moshannon Valley Processing Center houses foreign nationals alleged to be removable from the United States and civilly detained as a result of 8 U.S.C.§ 1226(c), which commands the Attorney General to take into custody removable aliens convicted of certain criminal offenses. Because the legal and logistical requirements of removal take time and because of a mismatch between the number of removable aliens and the resources allocated to determining their removability, Moshannon Valley has become the source of numerous habeas corpus petitions under 28 U.S.C.§ 2241(c)(3) from detainees asserting that their prolonged detention violates the Due Process Clause. Since

Moshannon Valley is in the Johnstown Division and no published cases have come from the Court of Appeals, cases in this division are the common law that attempts to apply both Jennings v. Rodriguez, 583 U.S. 281 (2018), holding that § 1226(c) could not be plausibly interpreted as requiring periodic bond hearings for aliens detained pending removal, and German-Santos v. Warden Pike County Correctional Facility, 965 F.3d 203, 210 (3d Cir.2020), holding that periodic bond hearings for detainees under § 1226(c) are however required by the Due Process Clause where prolonged detention makes § 1226(c) unconstitutional as applied.

As respondent must acknowledge, *see* Response at 10, the Third Circuit holds "that there are limits to the Government's authority to detain individuals under[Section] 1226(c) without an opportunity to bond," Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 473 (3d Cir. 2015) (citations omitted); *see also* Borbot v. Warden Hudson County Correctional Facility, 906 F.3d 274, 278 (3d Cir. 2018)("due process entitles §1226(c) detainees to a bond hearing **at some point**, with the exact time **varying with the facts** of the case.")(my emphasis); Nyameke v. Oddo, Case No. 3:22-cv-240-SLH-LPL (W.D.Pa.) and Rivas v. Oddo, Case No. 3:22-cv-223-KRG-KAP (W.D.Pa.), and precedent requires that to be determined in a case-by-case evaluation of the four factors used in German-Santos:

> As our constitutional analyses in Diop [v. ICE/Homeland Sec., 656 F.3d 221 (3d. Cir. 2011)] and Chavez-Alvarez [v. Warden York County Prison, 783 F.3d 469 (3d Cir. 2015)] are still good law, those cases govern as-applied challenges under § 1226(c). There, we held that "when detention becomes unreasonable, the Due Process Clause demands a hearing." Diop, 656 F.3d at 233; *accord* Chavez-Alvarez, 783 F.3d at 474–75. Reasonableness is a "highly fact-specific" inquiry. Chavez-Alvarez, 783 F.3d at 474. Together, Diop and Chavez-Alvarez give us a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable.
>
> The most important factor is the duration of detention. *See* Chavez-Alvarez, 783 F.3d at 475–78; Diop, 656 F.3d at 233–34. We begin there because the Supreme Court in Demore rejected a facial challenge to § 1226(c) based on the Government's representation that detention lasts between one-and-a-half and five months. 538 U.S. at 529–30, 123 S.Ct. 1708. Extending Demore's logic to as-applied challenges, we explained that detention "becomes more and more suspect" after five months. Diop, 656 F.3d at 234. In Diop, we held that the two-year-and-eleven-month detention of an alien who had been granted withholding of removal was unreasonable. Id. at 233–34. And in Chavez-Alvarez, we held that a lawful permanent resident's detention became unreasonable sometime between six months and one year. 783 F.3d at 478; *accord* Leslie v. Att'y Gen. of the U.S., 678 F.3d 265, 271 (3d Cir. 2012) (requiring a bond hearing for a lawful permanent resident who had been detained for four years).
>
> To be sure, we do not read Demore, Diop, and Chavez-Alvarez as setting a bright-line threshold at five months, six months, or one year. On the contrary, we

> explicitly declined to adopt a presumption of reasonableness or unreasonableness of any duration. Chavez-Alvarez, 783 F.3d at 475 n.7; Diop, 656 F.3d at 234. Nor will we do so here.
>
> Instead, we evaluate duration along with all the other circumstances, including these three other factors:
>
> First, we consider whether the detention is likely to continue. *See* Chavez-Alvarez, 783 F.3d at 477–78. When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable. *See* id.
>
> Second, we look to the reasons for the delay, such as a detainee's request for continuances. Diop, 656 F.3d at 234; *see* Demore, 538 U.S. at 531, 123 S.Ct. 1708 (upholding a "longer than the average" six-month detention because the alien had asked for a continuance). We also ask whether either party made careless or bad-faith "errors in the proceedings that cause[d] unnecessary delay." Diop, 656 F.3d at 234.
>
> But we do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings. Chavez-Alvarez, 783 F.3d at 476–77. Doing so, and counting this extra time as reasonable, would "effectively punish [an alien] for pursuing applicable legal remedies." Id. at 475 (*quoting* Leslie, 678 F.3d at 271). Nor do we hold the agency's legal errors against the Government, unless there is evidence of carelessness or bad faith. *Cf.* Diop, 656 F.3d at 234. That said, detention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably. *See* Chavez-Alvarez, 783 F.3d at 475.
>
> Third, we ask whether the alien's conditions of confinement are "meaningfully different[ ] " from criminal punishment. Chavez-Alvarez, 783 F.3d at 478. Removal proceedings are civil, not criminal. Zadvydas v. Davis, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). So if an alien's civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable. Chavez-Alvarez, 783 F.3d at 478. And as the length of detention grows, so does the weight that we give this factor. Id.

German-Santos v. Warden Pike County Corr. Facility, *supra*, 965 F.3d at 210–11.

J.M. is a 56 year old Haitian national who has been a permanent resident of the United States for more than 20 years. J.M. is medically fragile (a partial list of conditions includes diabetes, hypertension, and diseases of the eye including diabetic retinopathy and glaucoma) and has been blind in one eye since 2016, with an elevated risk of a detached retina that puts J.M. at unusual risk of total blindness. As a young adult, petitioner committed several minor criminal offenses. In 2020 J.M. was indicted for violating 18 U.S.C.§ 554 as a result of his attempt to smuggle firearms and ammunition to Haiti: he pleaded guilty in September 2020 and was sentenced to 57 months imprisonment with a supervised release term of 3 years. J.M. served the bulk of his sentence at a BOP facility in Fort Dix, N.J.

ICE took J.M. into custody in December 2023 and originally detained him at Moshannon Valley when the imprisonment term of his federal sentence expired pending the completion of removal proceedings. J.M. opposes his removal and has sought asylum, withholding of removal, and relief under the Convention Against Torture. An Immigration Judge denied any relief to J.M. in September 2024 and ordered J.M. removed to Haiti. J.M. then filed this petition and has been detained in ICE custody for roughly two years.

Petitioner's detention is likely to continue for some time because J.M. has sought various forms of relief and has not yet exhausted his available appeals. Under German-Santos, lapse of time cannot be characterized as careless or bad-faith delay for which either the petitioner or the government bears responsibility. The government's responsibility for the allocation of resources to the immigration/removal process is a nonjusticiable issue, and the time that this matter has been pending from the date of J.M.'s invocation of remedies has not been protracted relative to other pending civil matters.

Petitioner originally urged the illegality of his detention without bond because of the allegedly inadequate medical facilities and allegedly unconstitutional conditions at Moshannon Valley. Because of J.M.'s transfer to NWIPC the alleged inadequacies in the resources available to J.M. at Moshannon Valley and any actual deprivations of care for J.M.'s eye maladies throughout 2024 do not have a current impact on the German-Santos factors. Counsel for J.M. in their motion to expedite at ECF no. 48 allege continuing inadequacies in J.M.'s care at NWIPC. Two points can be made about that, and they cut in opposing directions. In favor of the government is that the record makes it clear that the government has and is providing medical care and that makes this case unlike the one considered in German-Santos, where it weighed in favor of the petitioner that he was confined to his cell for twenty-three hours per day. German-Santos, *supra*, 965 F.3d at 213. In favor of petitioner is the personal autonomy of any individual that must be respected even in detention: it is clear that whatever the constitutional adequacy of petitioner's health care if it were being considered in a prison conditions complaint, petitioner has a plausible belief, *see* Calderon Declaration *passim*, that he needs medical care that he will not be provided while in custody.

In the first year of Covid-19, a panel of the Court of Appeals held, in Hope v. Warden York County Prison, 972 F.3d 310, 327 (3d Cir.2020) that claims of unconstitutional conditions of confinement are cognizable in habeas petitions filed under Section 2241. Hope in effect adopted the precedent from Section 2255 and Section 2254 collateral attacks that authorized bail pending decision in a habeas case where there is a showing of likely success on the merits and extraordinary circumstances. *See* Landano v Rafferty, 970 F.2d 1230, 1239 (3d Cir.1992). Even though J.M.'s conditions of

confinement would not justify release under the limited circumstances authorized by Hope, his conditions of confinement are relevant to consideration under German-Santos. Despite Landano v. Rafferty's hedging of its consideration of the issue with the quote from Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986)("[W]e do not mean to suggest that a habeas petitioner's poor health is the only 'extraordinary circumstance' that may justify a grant of bail prior to disposition of the habeas petition"), it is important to point out that virtually every case that has not resulted in the summary dismissal of a motion for release pending the decision of a habeas matter involves a showing of a serious medical need. (Landano v Rafferty and Lucas v. Hadden themselves reversed the grant of bail where there was no showing of a medical crisis.)

The principle justifying habeas corpus is that persons not serving a lawfully entered criminal judgment should not be detained without prompt adjudication of their rights, because liberty is the norm and detention is the exception. *See* Hamdi v. Rumsfeld, 542 U.S. 507, 528 (2004) (plurality opinion). A decent respect for the Constitution's assignment of control of immigration to Congress also means that the limited role of habeas corpus is to guard against 1226(c) detainees being detained "for years," Borbot, *supra* 906 F.3d at 279, not to presume that a bond hearing is required after any specific number of months of detention.

Petitioner has been housed for two years in restrictive although not deliberately penal conditions for the duration of an immigration matter in which, since the appearance of counsel, he has been diligently pursuing his remedies, and which the government is not delaying. As his detention continues, the impact of his serious medical needs makes his civil detention increasingly indistinguishable from penal confinement. On balance, he is entitled to have his release considered in a neutral forum.

DATE: December 22, 2025

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record